SAUNDERS v. MOORE et al.—110 S. W. (2d) 1047.

Middle Section.   August 14, 1937.

Petition for Certiorari denied by Supreme Court, December 17, 1937.

376

Clark Leech, of Dickson, for Moore.
J. R. Morris, of Waverly, for Saunders.

FAW, P. J. In this case, A. P. Moore is insisting, through assignments of error and brief, that the trial judge erred in refusing to quash an execution issued by a justice of the peace of Dickson

county based on an execution from Humphreys county, against him and two others for $382.68 and costs, and a levy of said Dickson county execution by garnishment of the First National Bank of Dickson, and in rendering judgment against said garnishee for $340.65, and against him (Moore) for costs.

The material facts out of which the controversy arose, as disclosed by documentary evidence and the oral testimony of witnesses, are substantially as follows:

On January 3, 1929, J. B. Bell, a justice of the peace of Humphreys county, rendered a judgment against H. W. Moore, A. P. Moore, and W. D. Moore, and in favor of A. J. Saunders, for the sum of $382.68, and costs. H. W. Moore is a brother and W. D. Moore is the father of plaintiff in error, A. P. Moore. The judgment was based on a note on which (as between the makers themselves) H. W. Moore was the principal and the other makers were sureties.

Subsequent to the rendition of said judgment, J. B. Bell, justice of the peace, died, and his dockets passed into the custody of his successor in office, J. McReeves, who, on October 9, 1936, issued an execution upon said judgment against the three judgment debtors for $382.68 and costs, which execution was placed in the hands of R. P. Work, a justice of the peace for Dickson county, who, on the same day, issued another execution purporting to be issued upon an execution from Humphreys county pursuant to the provisions of section 4801, Shan. Code (Code 1932, section 8932).

One of the contentions of plaintiff in error is that the aforesaid execution issued in Dickson county is void because of an incorrect recital therein, to which we will make more specific reference later herein.

The execution issued by R. P. Work, justice of the peace, was by him placed in the hands of E. W. Williams, a deputy sheriff for Dickson county, who executed it (if it was a valid execution), or attempted to execute it (if it was void), by the service of a garnishment notice on the First National Bank of Dickson at 1 o'clock p. m. on October 9, 1936, summoning the garnishee to appear before R. P. Work, justice of the peace, to answer said garnishment at 2 o'clock p. m. on the same day. The said deputy sheriff promptly handed said execution and garnishment notice to said R. P. Work, justice of the peace, but without any written "return" thereon showing, or purporting to show, that he had executed them or either of them.

Plaintiff in error A. P. Moore, being advised of the service of said garnishment notice, appeared, with his attorney, before R. P. Work, justice of the peace, and obtained a continuance of the proceeding until October 12, 1936. But the examination of the papers in the case by the attorney for plaintiff in error, at the office of Esq. Work, disclosed what said attorney conceived to be a fatal defect in the Dickson county execution, and this was called to the attention of

Esq. Work, who, of his own motion, undertook to cure it by the issuance of another execution, which he placed in the hands of the aforementioned Deputy Sheriff E. W. Williams, with instructions to Williams "to go back to the Bank and re-serve it," and Williams again went to the banking house of the First National Bank of Dickson and showed the latter execution to S. G. Robertson, president of said bank, and told Mr. Robertson that "there was a mistake" and he "wanted to correct it," and "wanted to re-serve it on him;" but no additional written garnishment notice was served on the bank, and none was prepared. The last-mentioned execution issued by Esq. Work on October 9, 1936, as aforesaid, was by him inadvertently dated September 9, 1936, and so remained until after the judgment of Esq. Work was rendered as hereinafter stated. Said second execution issued by Esq. Work was promptly handed back to him by the Deputy Sheriff Williams, but it then had no written "return" of the deputy sheriff thereon. However, when said second execution was thus handed back to Esq. Work by the deputy sheriff, he (Esq. Work) wrote across the face of the execution first issued by him as aforesaid, the word "void," and also wrote on the margin thereof the words "withdrawn on account of error," and "stuck it up in the pigeonhole away from the other."

All of the things done with respect to the two Dickson county executions and the garnishment notice to the bank, so far as we have heretofore stated them, occurred between the hours of 1 and 3 o'clock in the afternoon of October 9, 1936. But, as before stated, before the arrival of the hour at which the garnishee had been notified to answer, the justice of the peace had made an order continuing the entire proceedings until October 12, 1936, and on the latter date plaintiff in error, A. P. Moore, filed a written motion in the court of the justice of the peace (Work) "to quash the execution issued in this cause by R. P. Work, Justice of the Peace, and the garnishment proceedings based on the said execution" upon grounds stated in the motion as follows:

"The execution and garnishment proceeding based thereon are void because the execution does not show by writing anywhere on it that it has been levied on anything, nor that it has even been into the hands of an officer.

"The said execution is based on a certified execution from Humphreys County, Tennessee, and is void because it does not follow the Statutory requirements, in that, the Humphreys County execution shows that it was issued by one J. McReeves, J. P., and the Dickson County execution shows that the Humphreys County execution was issued by one J. B. Bell, J. P.

"The said R. P. Work, Justice of the Peace, discovering that he had made a mistake in the issuance of the abovementioned execu-

tion did, without authority of law, issue another execution on the same debt and before the garnishment proceedings under the former execution could be disposed of. Therefore the said Justice of the Peace had issued two executions against the same person and for the same debt on the same day.

"The second execution issued by the said Justice of the Peace is void for the reason it is dated September 9, 1936, while the certified execution on which it was issued is dated October 9, 1936. Therefore, according to the faces of the two instruments, the Dickson County execution was issued one month before the Humphreys County execution which is the authority for the Dickson County execution.

"Neither of the above mentioned executions shows any officer's return on it, and therefore no valid levy has in fact been made."

At the same time the garnishee, First National Bank of Dickson, filed a written motion "to quash the execution or executions issued by Esquire Work in this cause," and "to quash the garnishment proceedings" upon grounds stated in its motion as follows:

"The execution issued by Esq. R. P. Work, J. P., in this cause on October 9, 1936 based on a certified execution from Humphreys County is void and insufficient in law because it does not comply with the Statute, in that, the Dickson County execution does not follow the Humphreys County execution. The Humphreys county execution and certificate state that said judgment was rendered by one J. B. Bell, J. P. on January 3, 1929, and that pursuant to this judgment the execution was issued by one J. McReeves, J. P.

"The Dickson County execution issued by Esq. Work, J. P. says that said Humphreys County execution was issued by J. B. Bell, J. P. which is not the fact and therefore violative of the Statute and is null and void and thereby avoiding and rendering illegal the garnishment proceedings based upon such void execution.

"The said R. P. Work, J. P. attempted to correct this error, after the garnishment proceedings had already been instituted under and by virtue of the said void execution. In order to correct this error, the said R. P. Work, J. P. issued another execution, making the correction by having the new execution state that said Humphreys County execution was issued by one J. McReeves, J. P.

"The new, or second, Dickson County execution issued by Esq. Work, J. P. has been substituted for the first execution, this Garnishee not knowing what has happened to the first void execution.

"And now, this Garnishee moves to quash the second, or new Dickson County execution and the garnishment proceedings had thereunder because it (the second execution) is also void and illegal for it shows on its face that it was issued on 9 day of September 1936 which date is one month earlier than the date of the

Humphreys County execution on which the Dickson County execution is based.

"Both the Dickson County executions are void and invalid for the reason that neither of them has any officer's return or any writing showing that a valid levy has been made thereon to show what has been done under and by virtue of either of them, therefore the garnishment proceedings based on either or both of said void executions are void."

On the same day (October 12, 1936) and, so far as we can ascertain from the record, at the same time the aforesaid motions to quash were filed, A. P. Moore filed a pleading styled "Plea in Abatement" which contained substantially the same defenses presented by the aforesaid motions to quash.

The justice of the peace overruled the two motions to quash and the "Plea in Abatement," and the garnishee filed an answer, verified by the oath of its president, as follows:

"In this cause the First National Bank of Dickson, Tennessee, through its President, answering as garnishee, says:

"That on Oct. 9, 1936, when the garnishment was served on the bank A. P. Moore had on deposit to his credit $340.65; that on today, October 12, 1936, there comes to this bank for payment, through the regular banking channels, a check drawn by A. P. Moore in favor of O. W. Briggs in the sum of $200.00. This check is dated '10/7/1936' and is now held in the bank pending the outcome of this garnishment proceedings.

"Mr. A. P. Moore has today presented to this bank a check drawn on himself and payable to himself for the sum of $140.65 and has demanded payment of said check, contending that the garnishment proceedings and the execution on which the garnishment proceedings is founded are both void.

"First National Bank,
"Dickson, Tennessee.
"By S. G. Robertson
"President."

And thereupon the justice of the peace rendered judgment for the plaintiff (Saunders) and against the garnishee, First National Bank of Dickson, "for $340.65, and interest at six percent," for which he awarded execution; and from said judgment A. P. Moore appealed to the circuit court of Dickson county.

When the case was called for trial in the circuit court, without a jury, the plaintiff in error, through his attorney, first sought a hearing upon his aforesaid motion to quash, but, after somewhat extended statements of their respective contentions by counsel, in the course of which counsel for defendant in error (Saunders) asked leave to file a brief (on the questions arising on the motion

to quash), the record discloses statements by the court and counsel as follows:

"Court: Mr. Morris, wants to file a brief, you let me have your brief and I will take the papers. I have no proof except your statement that there are two executions, and I have no proof as to which was issued first; one of them seems to be marked September 9th, and October 9th marked on it; that the one issued first?

"Mr. Leech: No, sir, the one issued first was the other one, and the Magistrate has attempted—he has written across it withdrawn on account of error; that is the one under which garnishment proceedings were instituted, and now we are in this shape about filing a brief; now we have these same grounds included in a plea of abatement, which we filed here, and we do have proof here to put on under that plea in abatement; we have the Magistrate and the officer.

"Court: I merely wanted a brief here, and come up to plea in abatement, if it comes up to quash you won't need any plea in abatement?

"Mr. Morris: Permit me to make a suggestion your Honor. I believe it would be well for the Court to have the whole matter before it, so that it might know actually how come two executions, and why the Magistrate did that. I am perfectly willing for the whole matter to go before the Court, and let the Court know the facts.

"Mr. Leech: We think our motion is sufficient in face of all the instruments, and in face of the judgment; if you call it a judgment that the Magistrate issued against the First National Bank when the First National Bank is not the defendant at all, but is the garnishee.

"Mr. Morris: You have got him made defendant here.

"Court: If Mr. Morris wants to hear the case under the plea in abatement, I will hear them both, consider the motion along with the plea in abatement.

"Mr. Leech: Well, I will read this plea in abatement:"

Thereupon the "plea" was read, and four witnesses, viz., A. P. Moore, the plaintiff in error, R. P. Work, justice of the peace, E. W. Williams, deputy sheriff, and S. G. Robertson, president of the garnishee bank, were introduced by the plaintiff in error and examined and cross-examined before the court.

Thereafter the court's judgment was entered as follows:

"This cause was further and finally heard by the Hon. Dancey Fort, Judge, without the intervention of a jury, on this December 2, 1936, upon the entire record, including defendant's motion to quash the execution or executions; defendant's plea in abatement; garnishee's answer; the testimony of witnesses; brief and argument of counsel. And after due consideration of the entire record,

the defendant's motion to quash and plea in abatement are both, by the Court overruled.

"It is further ordered, adjudged and decreed, by the Court, that plaintiff have and recover of the garnishee, First National Bank of Dickson, Tennessee, the sum of Three Hundred Forty Dollars and sixty-five cents ($340.65), for which execution is awarded.

"The defendant, A. P. Moore, will pay the costs of this cause, for which execution may issue.

"The defendant excepts to the action of the Court in overruling his motion to quash the execution or executions.

"The defendant also excepts to the action of the Court in overruling his plea in abatement.

"The defendant gives notice that he will, at this term of Court, move for a new trial."

In due season, the defendant below moved for a new trial, but his motion was overruled; and he then moved the court to arrest the judgment, basing the latter motion "upon the same grounds as stated in defendant's motion for a new trial, and the further ground that the garnishment proceedings are void because based on an execution which is void on its face;" but the motion in arrest of judgment was likewise overruled; whereupon the defendant, reserving exceptions, prayed, obtained, and perfected an "appeal" to this court, which "appeal" will be treated here as an appeal in the nature of a writ of error. Manley v. Chattanooga, 1 Tenn. App., 65; Lyon v. Crabtree, 16 Tenn. App., 42, 64 S. W. (2d), 24; Merriman v. Coca Cola Bottling Co., 17 Tenn. App., 433, 435, 68 S. W. (2d), 149.

Without following the order in which the plaintiff in error has stated his assignments of error in this court, or copying the assignments herein, we think the assignments of error, in substance and effect, present for our consideration and disposition certain propositions asserted on behalf of plaintiff in error as follows:

(1) The first of the two Dickson county executions was void, because it recited that it was based upon an execution issued by J. B. Bell, a justice of the peace of Humphreys county, whereas the Humphreys county execution shows that it was issued by J. Mc-Reeves, a justice of the peace of Humphreys county.

(2) The judgment against the garnishee, First National Bank of Dickson, cannot be supported by the first of the two Dickson county executions, for the reason that no written return of same was ever made by the deputy sheriff in whose hands it was placed, and there is, therefore, no legal evidence of a levy thereof by garnishment.

(3) No valid judgment against the garnishee was, or could be, based upon said first Dickson county execution, for the reason

that it was abandoned, marked "void," "withdrawn," and canceled by the justice of the peace who issued it.

(4) The second Dickson county execution was void, because the date of the issuance, as written thereon by the justice of the peace who issued it, was September 9, 1936, which was one month prior to the date of the Humphreys county execution.

(5) The second Dickson county execution was void for the further reason that it was issued before the garnishment proceedings under the first Dickson county execution were, or could be, disposed of.

(6) There could be no valid judgment against the garnishee upon the second Dickson county execution, for the reason that, at the time of the trial before the justice of the peace and the rendition of his judgment, the deputy sheriff, to whom said execution had been delivered, had made no return of any kind thereon, and it did not appear by any sufficient legal evidence that said execution had been levied by garnishment of otherwise; and there was at no time a legal and valid return of said execution upon which judgment could be rendered against the garnishee, First National Bank of Dickson.

(7) The deposit to the credit of plaintiff in error in the First National Bank of Dickson was not subject to execution by garnishment, for the reason that it was acquired by him from a sale of his personal property exempt from execution, viz., his crop, team, farming implements, wagon, harness, etc.

(8) If the court should hold that none of the foregoing seven propositions is maintainable, then, in that event, the judgment against the garnishee bank should be reduced to the extent of $200 on account of the check for that sum which was drawn by plaintiff in error and mailed to the payee, O. W. Briggs, on October 7, 1936, two days before the issuance of either of the executions, and was presented to the garnishee bank for payment before it answered the garnishment.

We will consider the foregoing eight propositions in the order of their statement herein.

It is conceded, and properly so, that the certified execution from Humphreys county was so far regular and valid as to afford a predicate for the issuance of an execution by the justice of the peace of Dickson county.

We see no occasion to decide whether the first Dickson county execution was or was not void because of the recital therein that it was based upon an execution issued by J. B. Bell, a justice of the peace of Humphreys county, and we pretermit an expression of opinion upon the first proposition, supra, for the reason asserted in the second and third propositions.

That is to say, no legal return of said first Dickson county

execution was made at any time by the deputy sheriff in whose hands it was placed, but the proof shows that it was abandoned by said deputy sheriff, and was marked ''void,'' and was ''withdrawn'' by the justice of the peace who issued it, and it was by said justice of the peace canceled and discarded as a worthless piece of paper. Obviously he (R. P. Work, justice of the peace) did not base his judgment against the garnishee upon that execution and neither he nor the circuit court could lawfully base a valid judgment thereon after it was thus withdrawn, abandoned, and discarded as void. Esq. Work testified that he sent it up to the circuit court with the papers because he was requested by counsel to do so.

A valid, existing execution is essential to the validity of a garnishment. In re Mechanics Bank & Trust Co., 144 Tenn., 495, 499, 234 S. W., 332, and other cases there cited; Rowland v. Quarles, 20 Tenn. App., 470, 100 S. W. (2d), 991, 993, and other cases there cited. This disposes of the first three propositions, supra.

The conclusion just stated makes it unnecessary to discuss the authorities cited in the brief for plaintiff in error in support of the proposition that the first Dickson county execution was void on its face.

The date (September 9, 1936) on the second Dickson county execution when issued was a mere clerical error on the part of the justice of the peace who issued it, which error misled no one. This error was called to the attention of the justice of the peace (Esq. Work) when the case ''came to trial'' before him, and he thereupon took his pen and ''run through September and wrote October,'' thus making the date on said execution conform to the true date of its issuance. We do not concur in the fourth proposition, supra.

It is provided by section 8882 of the Code that, ''no alias or pluries execution shall issue until the previous execution is returned, or satisfactorily accounted for by affidavit.''

The ''alias or pluries execution'' mentioned in Code, section 8882, supra, presupposes an original or prior valid execution. A void execution is no execution at all, it is simply a nullity. The justice of the peace (Work) treated the execution, which (as a convenient method of designation or identification) we have described as the first Dickson county execution, as ''void'' and a nullity. The plaintiff in error, Moore, has insisted throughout the litigation below, and is insisting here, that it is void; hence he is precluded from reliance upon a proposition which can have no efficacy except upon the hypothesis that said first Dickson county execution was a valid and existing execution at the time the second Dickson county execution was issued. We, therefore, do not think the fifth proposition, supra, can be maintained.

Repeating: the sixth proposition, supra, is that there could be no

valid judgment against the garnishee upon the second Dickson county execution, for the reason that at the time of the trial before the justice of the peace and the rendition of his judgment, the deputy sheriff, to whom said execution had been delivered, had made no return of any kind thereon, and it did not appear by any sufficient legal evidence that said execution had been levied by garnishment or otherwise, and there was at no time a legal and valid return of said execution upon which judgment could be rendered against the garnishee, First National Bank of Dickson.

The "return" of an execution "means two things: (1) the bringing of the writ back to the office from which it issued; and (2) the endorsement on it by the Sheriff of what he had done under it." History of a Lawsuit (4th Ed., Martin) page 371.

The undisputed testimony of Esq. Work is that Williams, the deputy sheriff, brought the second Dickson county execution back to his office and delivered it to him on the same day it was issued (October 9, 1936), but that it at that time had no endorsement on it by the deputy sheriff showing, or purporting to show, what he had done under it, and that it had no such indorsement on it at and during the trial later before him (Work) on the aforesaid motions to quash and "plea in abatement;" that his attention was first called by the "plea" to the absence of a return by the deputy sheriff; that "right after the trial" (before Esq. Work on October 12, 1936) the deputy sheriff wrote an "endorsement" on the said second Dickson county execution (but without date) as follows: "Executed by serving garnishment on S. G. Robertson, no property to be found. E. W. Williams, D. S."

But the First National Bank of Dickson appeared, through its president, S. G. Robertson, and answered the garnishment. This was a waiver of objections to the manner of the garnishment summons (Moody v. Alter, 12 Heisk., 142, 146), and also a waiver of the insufficiency of the officer's return (Rowland v. Quarles, 20 Tenn. App., 470, 100 S. W. (2d), 991, 994). See, also, Miller v. Wilson, 86 Tenn., 495, 499, 7 S. W., 638.

In Railway Co. v. Brooks, 90 Tenn., 161, 16 S. W., 77, 78, 25 Am. St. Rep., 673, there was no written notice to the Railway Company as garnishee or otherwise, and the only notice it had was given by the officer reading to its agent an execution, and at the same time verbally telling him to appear and answer (just as was done under the second Dickson county execution in the instant case). The Railway Company did not appear or answer, and judgment was rendered against it as garnishee. The Supreme Court held that the judgment was void. In the midst of the opinion, the court said:

"The written notice is the original process by which the garnishee is brought before the court, and the only authority which the

officer or judgment creditor has for demanding his appearance, and a disclosure of his financial and property relation to the judgment debtor. Hence a judgment without service of written notice is a nullity, unless notice be waived, and the burden of showing a waiver is on the garnishment creditor,—the one claiming the benefit of it.

"Any defect in garnishment proceedings may be waived, as defects in other legal proceedings may be waived. Hearn v. Crutcher, 4 Yerg., 461; Moody v. Alter, 12 Heisk., 142; Miller v. O'Bannon, 4 Lea [398], 403. In this case there is nothing even indicating a waiver."

It is seen that the efficacy of a waiver of defects in the notice and return by appearance and answer of the garnishee is clearly recognized in Railway Co. v. Brooks, supra. For the reasons stated, we do not think the sixth proposition, supra, can be successfully maintained; and this conclusion is reenforced by the provisions of the Code, sections 10189 and 10190, as follows:

10189: "Every intendment is in favor of the sufficiency and validity of proceedings before justices of the peace, when brought in question, either directly or collaterally, in any of the courts, where it appears on the face of the proceedings that the justice had jurisdiction of the subject-matter and of the parties."

10190: "No civil case, originating before a justice of the peace and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper; and the trial shall be de novo."

See, also, the numerous cases cited in the notes to said sections 10189 and 10190 in William's Annotated Code, wherein our courts have made liberal intendments in favor of proceedings before justices of the peace, and have exercised great liberality of construction to sustain such proceedings.

The contention embraced in the seventh proposition, supra, that the deposit of plaintiff in error in the First National Bank of Dickson was exempt from execution because it was the proceeds of the sale of his "crop, team, farming implements, wagon, harness, etc.," cannot be sustained.

The articles of personalty thus named are not designated as exempt property by the Code of 1932, but were, in large part at least, exempt under previous statutes in force at the time the obligation which it is sought to enforce in this instance was created; and the exemption laws in effect at the time of the creation of the obligation, and not the exemption laws in effect at the time of

an execution, determine what personal property of the debtor is exempt. Hair v. Ramsey, 165 Tenn., 149, 53 S. W. (2d), 381.

But it does not follow that the proceeds of a voluntary sale of exempt property are exempt from execution. There is no suggestion on the record that the sale of the property in question was forced upon the plaintiff in error by judicial or legal process, or that it was in any sense an involuntary sale; and the proceeds of a voluntary sale of exempt property are not exempt. Timothy Dry Goods Co. v. Hyde, 5 Tenn. App., 491, 497, and authorities there cited.

■■■■ The undisputed proof shows that plaintiff in error drew the check for $200 mentioned in the eighth proposition, supra, in good faith, and mailed it to O. W. Briggs, at Clarksville, Tenn., on October 7, 1936, two days before the execution in question was issued, to pay a debt he owed Briggs, and that it reached the garnishee, First National Bank of Dickson, for payment, through ordinary banking channels, after the garnishee had notice of the garnishment, and before the answer of the garnishee was filed with the justice of the peace. But such check did not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank was not liable to the holder of the check, unless and until it accepted or certified the check. Code, sec. 7513; Imboden v. Perrie, 13 Lea, 504; J. C. Jacobs Banking Co. v. Banking Co., 6 Tenn. Civ. App., 127, 141; First Nat. Bank of Murfreesboro v. Bank, 127 Tenn., 205, 212, 154 S. W., 965; Annotation, L. R. A. 1916C, page 166 et seq.

As the check here in question had not been presented to the bank at the time the bank received notice of the garnishment, the entire sum to the credit of plaintiff in error at that time was subject to the garnishment. Lockett v. Beaver, 97 Tenn., 396, 37 S. W., 140; Beaumont v. Eason, 12 Heisk., 417, 418; Timothy Dry Goods Co. v. Hyde, 5 Tenn. App., 491, 496.

The case of Crudgington v. Hogan, 105 Tenn., 448, 58 S. W., 642, cited for plaintiff in error, is not in point.

It results that all of the assignments of error are overruled and the judgment of the circuit court against the garnishee, First National Bank of Dickson, is affirmed.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiff in error, A. P. Moore.

Crownover and Felts, JJ., concur.