Cox *v.* City of Bristol.

*(Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

Rehearing denied January 19, 1946.

84

JOSEPH A. CALDWELL, of Bristol, for complainant.

CURTIN & HAYNES, of Bristol, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

On December 8, 1931, John I. Cox filed the original bill in this cause to enjoin the City of Bristol from collecting certain paving assessments on certain suburban property in which he owned a one-half undivided interest. The city filed an answer and cross-bill seeking a judgment for $5,006.57, representing one-half of the original assessment against the whole property, and by the cross-bill it also sought recovery of certain *ad valorem* taxes assessed against the property for the years 1933-1940. No further steps were taken in the cause until July 1935, when the city filed an amended cross-bill, making additional parties, Lorena B. Cox, wife of complainant, and the Missionary Emergency Fund, Inc., the owner of the other one-half interest in the property. This amended cross-bill contained a detailed description of the property, and an attachment on the property was then sought for the first time to fix a lien for the satisfaction of the taxes assessed against it.

The attachment as prayed was issued and levied in connection with the amended cross-bill. As the courts below seem to have overlooked, the complainant in an-

swering this amended cross-bill, admits the levy of the attachment but denies the right of the city to levy it, or that it was seasonably levied. The city, in July 1935, filed a further amended answer to the original bill, in which for the first time it raised the defense that Code, sec. 3474 provided an exclusive remedy under the facts stated in the original bill, and that injunctive relief was not proper nor permissible. A *pro confesso* was taken against the codefendant Missionary Emergency Fund, but service upon said corporation to support such *pro confesso* has disappeared. Apparently the *pro confesso* is regularly taken upon the docket but there is no paper to show that service was ever had on said corporation.

Finally, after the pleadings had been amended variously, as we shall note hereafter, under an agreed order of reference on April 12, 1943, a special master was appointed to take and hear proof and report, (1) the amount of state, county and city taxes for the collection of which valid and enforceable tax liens exist upon the property in question; (2) the amount of street assessments owing the city, supported by valid and enforceable liens upon the property or any part of it; (3) the exact description of the property upon which the street assessment liens were fixed; (4) all taxes barred by the statute of limitation, and (5) all other matters germane which might arise during the conduct of the master's investigation.

The special master, who was a practicing attorney, filed a careful detailed report on May 28, 1943. He held that $1,070.95 was due the City of Bristol in *ad valorem* taxes, that the amount of street assessments should be limited to $2,000 with interest from May 1, 1931, plus intersection charges of $242.75 with interest from the same date. He disallowed recovery on city taxes on the tract from 1933 to 1940, inclusive, because assessments

for these years had been made by lot and block number when no plan for a subdivision of that part of the property had been approved by the city to justify an assessment otherwise than by acreage.

Both the city and John I. Cox excepted to this report of the special master. Then prior to the hearing on these exceptions to the report, John I. Cox acquired the interest of his codefendant, the Missionary Emergency Fund, Inc., and filed an answer, by which he undertook to have set aside the *pro confesso* theretofore taken against said codefendant, and to adopt for defense to the city's claim against this other half interest in the property, all the defenses which he, John I. Cox, had made as original complainant and cross-defendant in the cause. No order setting aside the *pro confesso* appears in the record.

Upon the hearing, on the report of the special master and the exceptions thereto, the chancellor sustained the exception taken by John I. Cox, and held that no street assessments were collectible on the ground that the city had failed to show that it had taken the necessary steps for the creation of a special improvement district under the statute. He held that the approval of a definite map and the passage of an appropriate ordinance were essential and jurisdictional under the law. Code, sec. 3409 *et seq.* He voided the attachment on the ground that the return was incomplete, and he concurred with the master in denying complainant's liability on the city taxes for the years 1933 through 1940, inclusive. He approved the Master's allowance of the recovery by the city of certain other taxes on the property.

After the decree the city filed petition to rehear, seeking opportunity to introduce proof of the passage of the ordinance and the taking of other steps to create the improvement district. The chancellor denied the petition

to rehear and both parties prayed an appeal to the Court of Appeals, but the city alone perfected its appeal by filing bond and making assignments of error.

The Court of Appeals has filed two opinions, one on July 15, 1944, and the second after petition to rehear on January 3, 1945. In its first opinion, the Court of Appeals sustained the seventh assignment of error made by the city, which was that the chancellor erred in overruling its petition to rehear, and pretermitted other questions in remanding the cause. After the city filed petition to rehear in the Court of Appeals, the court rendered a second opinion in which it sustained other assignments by the city and again remanded the cause.

Petitions for *certiorari* have been filed here by both parties. We granted both petitions, have heard argument and the case is before us for disposition.

Obviously, much of the confusion and difficulty in this record are attributable to the many years during which the case has lain dormant in court. The parties and their counsel have fought a while and then rested a while, until one or other has secured reinforcement by way of new counsel or new ideas. The grounds of attack and defense have shifted. The consequence is that as an exhibit of legal strategy, the record is remarkable for its variety rather than its consistency.

We consider first the first assignment made by both petitioners in their petitions for *certiorari*. They both involve, from opposing points of view, the same part of the second opinion of the Court of Appeals. It is: "Our previous opinion disposes of assignments I, II, V, and VII. The last mentioned was the only one sustained. The other *two* (three) are so closely interlocked with the one sustained that we cannot rule on them separately. In other words we practically sustained all *three* (four)

in our previous opinion." (Italics and numbers in parenthesis our interpolation.)

These assignments were that the chancellor erred:

I. In denying the city recovery for its special improvement taxes.

II. In adjudging the city had the burden of proving the legal creation of the improvement district.

V. In not holding that complainant's exclusive remedy was at law under Code section 3474.

VII. In not granting the city's petition to rehear.

In its first opinion, the Court of Appeals had sustained VII and remanded for a rehearing in chancery court. It is unfortunate that by typographical error, no doubt, the words "two" and "three" italicized in the foregoing quotation from the opinion were used in error for "three" and "four". However, on reflection, it is clear that the writer of the opinion meant that by remand to the chancery court, he denied (V) the exclusive jurisdiction of the law court, and (I) and (II) the city's demand for an immediate recovery of the special improvement taxes.

■ The city's first assignment of error in petition for *certiorari* is that the Court of Appeals erred in overruling its I, II and V assignments there made to the adverse action of the chancellor. As stated, the fifth assignment in the Court of Appeals was to the effect that there is no authority for the filing of the original bill as an injunction bill in the Chancery Court; that the appropriate and exclusive remedy for the relief sought was at law under Code, section 3474. If the city had raised this question by appropriate pleading when its first plea was filed to the original bill, we have no doubt that the plea should have been sustained and the bill dismissed. But the city did not do this, and elected to answer and enlarge the scope of the litigation by filing a cross-bill, seeking sep-

arate affirmative relief in the collection *inter alia* of taxes that were not special improvement taxes. It is elementary that such answer and cross-bill was a waiver of the city's right to attack the jurisdiction. *Gibson's Suits in Chy.* (1937 Ed.), sec. 232; Code, sec. 10465; *Cooke* v. *Richards*, 58 Tenn. 711. The city's first and second assignments in the Court of Appeals, which are incorporated in the first assignment on petition for *certiorari*, are that the chancellor and the Court of Appeals erred in denying the city recovery for street assessments, and holding that the city had the burden of showing the regular and legal creation of the improvement district.

We fully agree with the rule: " 'In support of an assessment of taxes, it will be presumed that it is valid, regular and correct and that various officers charged with the making of the assessment all performed their duties in good faith and at the proper time and in conformity with the statutes and that other various Acts were legal and proper; and this presumption will stand until overcome *by satisfactory evidence to the contrary.*' 37 Cyc. 1069." *State ex rel.* v. *Collier*, 160 Tenn. 403, 432, 23 S. W. (2d) 897, 906, quoted and approved in *State ex rel.* v. *Rowan et al.*, 171 Tenn. 612, 625, 106 S. W. (2d) 861.

In this case, however, it appears from the testimony of the complainant and several witnesses that there was positive evidence to rebut the presumption. The chancellor so clearly held in his opinion, and reviewed the testimony pertinent, at some length and in detail, in more than two typewritten pages of his opinion. The evidence was clearly satisfactory to him that the necessary jurisdictional steps for the creation of the improvement district and the assessment of the tax therefor had not been complied with by the city. Under this state of the record, the rule with regard to presumptions in favor

of performance of duties by public officials (*State ex rel. v. Collier, supra*) has no application, and it is for the city to overcome the testimony of the complainant and other witnesses, by evidence in denial, for any probative effect of the presumption is annulled completely by positive evidence to the contrary. *Marquet* v. *Aetna Life Insurance Co.*, 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749, *Ann. Cas.* 1915 B, 677; *Siler* v. *Siler,* 152 Tenn. 379, 386, 277 S. W. 886; 22 C. J. 79; 31 C. J. S., Evidence, sec. 119.

For the reasons stated, the first assignment of error made by the city in its petition for *certiorari,* which embraces the first, second and fifth assignments in the Court of Appeals, must be overruled.

The second and final assignment of the city on *certiorari* is:

"The Court of Appeals erred in overruling petitioner's fourth assignment of error, and in denying petitioner a recovery for taxes for the years 1933 through 1940, on that part of the 30 acre tract assessed by lot and block numbers.

"This was error because the descriptions in the tax assessment books fully complied with the requirements of the law, especially in view of Code sec. 1353; also because even if John I. Cox had not originally authorized the subdivision, by not appearing before the Equalization Board or making any objection to the assessment in this manner, he is now estopped to say the descriptions are insufficient because he did not authorize the map."

Code, section 1353 provides that parol evidence may be introduced to make definite an assessment otherwise indefinite. It has been frequently construed and its application defined by this Court. *State ex rel.* v. *Collier,* 160 Tenn. 403, 23 S. W. (2d) 897; *Case* v. *Brier Hill Collieries,* 145 Tenn. 1, 235 S. W. 57.

■ Such parol evidence was introduced before the master to complete and make definite the assessments here. He found the evidence insufficient and denied the validity of the assessments. Both the chancellor and the Court of Appeals have concurred, and we think that since the finding by the master was clearly one of fact, that the concurrence of the two courts finally determines the invalidity of the assessments for the taxes for the years 1933-1940, and that the question is no longer open in this Court. The authority of the recent case of *City of Bristol* v. *Delinquent Taxpayers*, 179 Tenn. 604, 168 S. W. (2d) 782, was sufficient authority for their decision on the legal questions presented. For these reasons the second assignment of the city is overruled.

Coming to complainant's assignments of error in his petition for *certiorari,* we have already considered his first assignment in our consideration of the city's first assignment.

■ ■ We overrule the second assignment, which assails the action of the Court of Appeals in sustaining the attachment of the property here involved, because complainant in the answer which he filed to the cross-bill on which the levy was made, did not assail the validity of the attachment, but in effect, admitted its validity, denying only the authority of the city to have it levied and that it was levied within the time prescribed by law. At the time of this answer, the levy had just been made and the officer's return was before counsel as he prepared the answer. If the return had not then contained a description of the property, it is unreasonable to infer that counsel, who in drafting the answer, showed such legal acumen and learning in its other parts, would not have filed the pleading necessary to have the incomplete and invalid return stricken from the file. Further, it is a

circumstance to be considered that on the clerk and master's docket there is a complete description entered at the time of the attachment. It is in no way remarkable that a part of the return was lost during the many years that this cause was pending in Court, and we think that this situation presents one in which we should invoke the rule that in the absence of positive evidence to the contrary, a public officer will be presumed to have done his full duty under the law. The authorities for the proposition are presented above under our discussion of the city's first assignment. The failure of the sheriff to make a recital in a deed in *Siler* v. *Siler, supra,* is in legal effect, similar to the situation here.

In view of our disposition of the case, no discussion of complainant's third and final assignment seems necessary.

As necessarily modified by this opinion, the decree of the chancellor is affirmed and the cause remanded to the chancery court for entry of a final decree in accord with such modification. The parties will divide the costs on the appeal and the chancellor will assess the costs in the chancery court in the decree.